[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is the one of four appeals taken from the action of the Watertown Planning Zoning Commission (hereinafter "Commission') in connection with certain amendments to the zoning regulations that were approved on November 12, 1997. The court heard oral argument on all of the cases on he same day and will issue its opinions on each case today. Many of the facts as to the action of the Commission and the record in general is the same in all of the cases and therefore the court will not repeat in each opinion the findings or observation made but will make reference toSarlom v. Watertown Planning Zoning Commission, Superior Court, judicial district of Waterbury, Docket No. 143368 (May 19, 1999,Pellegrino, J.) where appropriate.
 THE COMMISSION'S ACTION
The Commission sought to amend its zoning regulations pertaining to its business districts. When a zoning commission acts to amend its regulations, it acts as a legislative body.First Hartford Realty Corp. v. Plan Zoning Commission of theTown of Bloomfield, 165 Conn. 533, 540, 338 A.2d 490 (1973) "The CT Page 7890 test of the action of the commission is two-fold: (1) The zone change must be in accord with a comprehensive plan. and (2) it must be reasonably related to the normal police power purposes enumerated in [General Statutes §] 8-2. . . . A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties. . . . The requirement of a comprehensive plan is generally satisfied when the zoning authority acts with the intention of promoting the best interests of the entire community. . ." (Citations omitted.) Id., 541. In reviewing the action of the commission on appeal, the question for the court is whether the decision is supported by substantial evidence.
On November 12, 1997 the Commission voted to amend its regulations regarding the permitted size of retail businesses in all business zones. In the Central Business District (B-C) the permitted use was reduced from a Gross Floor Area ("GFA") of 20,000 sq. ft. to a maximum GFA of 10,000 sq. ft. with a special permit use from over 20,000 sq. ft. to a maximum of 20,000 sq. ft. For the Shopping Center Business District (B-SC), a permitted use was reduced from an unlimited GFA to a maximum GFA of 20,000 sq. ft., and in the General Business District (B-G), a permitted use was reduced from an unlimited GFA to maximum GFA of 10,000 sq. ft. and a special permit use to a maximum GFA of 20,000 sq. ft. The Commission held a public hearing on November 12, 1997 and voted to adopt the proposed changes. Notice of the decision of the Commission was published in the Waterbury Republican-American on November 14, 1997, to take effect on November 17, 1997.
In this case, as well as the other appeals, the court must first decide the issue of aggrievement in order to acquire subject matter jurisdiction. Jolly Inc. v. Bridgeport ZoningBoard of Appeal, 237 Conn. 184, 676 A.2d 831 (1996); Walls vPlanning Zoning Commission, 176 Conn. 475, 408 A.2d 252 (1979). The defendant in this case, as in the other matters, has stipulated that there is aggrievement and therefore the court will find, based on the stipulation of both parties, that the plaintiff is aggrieved.
 STRAITS' CLAIM
The plaintiff in this appeal, Straits Commercial Associates Limited Partnership, owns a 21.26 acre parcel of property located CT Page 7891 in a Shopping Center Business District (B-SC) zone under the Watertown zoning regulations. The plaintiff appeals on four grounds. First, the plaintiff argues that there is an insufficient record from which to conclude that the zoning amendments conform to the comprehensive plan of the Town of Watertown. Second, the adoption of the amendments was illegal, arbitrary and unconstitutional because the maximum square footage requirement is not rationally related to the community' s public health and safety. Third, the amendments are unreasonable, arbitrary and void for vagueness in violation of the fifth andfourteenth amendments to the United States Constitution and article first of the Connecticut Constitution. Lastly, the plaintiff argues that the zoning amendments are invalid because the notice requirements in General Statutes §. 8-3 are constitutionally deficient as applied to the facts of this case.
 DISCUSSION
I Comprehensive Plan
The plaintiff argues that the record is insufficient to support a finding that the amendments are consistent with the comprehensive plan of Watertown. "A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties. . . . The requirement of a comprehensive plan is generally satisfied when the zoning authority acts with the intention of promoting the best interests of the entire community." (Citations omitted; internal quotation marks omitted.) Protect Hamden/North Haven v. Planning and ZoningCommission, 220 Conn. 527, 551, 600 A.2d 757 (1991); FirstHartford Realty Corp. v. Planning Zoning Commission of the Townof Bloomfield, 165 Conn. 533, 541, 338 A.2d 490 (1973).
The Town of Watertown adopted and established zoning regulations in 1993 which included the establishment of zoning districts, a zoning map, procedures for site plans and special permits, and supplementary regulations. (Record #19)
Article I of the regulations states the intent and purpose of the regulations. The objectives as stated in Section 1 include,inter alia, the prevention of overcrowding of the land and the avoidance of an undue concentration of population; the protection and conservation of the "character, the environment and the CT Page 7892 social and economic stability of all parts of the Town" and the encouragement of "the orderly and beneficial development of the Town". . . and the promotion of "the most beneficial relationship of streets and traffic circulation throughout the Town and the arrangement of land uses, having particular regard for the minimizing of congestion in the streets and the promotion of safe and convenient vehicular and pedestrian access appropriate to the various uses throughout the Town. . ." (Record #19, pp. 1-2.)
The stated purposes of the various business districts are the following: "To encourage the orderly development of a shopping area for the Town which provides the opportunity for creative and flexible architectural design, the sound interrelationship of buildings and open spaces, pedestrian and vehicular circulation, landscaping, parking areas and business uses and to carry out the recommendations and proposals for circulation and use contained in the duly adopted plans and policies of the Commission"; (Record #19, Section 31 — Central Business B-C District, p. 63); "to accommodate retail stores and service establishments primarily serving the neighborhood needs of Town residents"; (Record #19, Section 32 — Local Business B-L District, p. 66); "to accommodate unified development of planned commercial facilities to serve a local and regional market"; (Record #19, Section 33 — Shopping Center Business B-SC District, p. 69); and "to accommodate larger retail and service establishments primarily serving the needs of the entire Town and neighboring communities." (Record #19, General Business B-G District, p. 71.).
There is ample evidence in the record demonstrating that the amendments are consistent with the comprehensive plan. The record illustrates concerns regarding, traffic, congestion, and the impact of stores exceeding 10,000 square feet, particularly with regard to parking. (Record #2.) The comments from members of the public demonstrate the desire to maintain the community character in Watertown by protecting the appearance of commercial areas, providing for sidewalks, and limiting commercial activity through maximum square footage requirements that could lead to urban blighted areas. (Record #13.) These concerns fit within the stated purposes of the zoning regulations.
One member of the commission stated that the zoning amendments were "very much in keeping with what was looked at in the original Plan of Development, as well as the corridor study which was done at the same time. The Commission is looking at all of the Business Districts in the community to bring them more CT Page 7893 into line with what the vision for the community was as expressed in the Plan of Development. There have been concerns for a long period of time about the effect on the community if all of the commercial areas in Town were allowed to develop based on what had been permitted by the regulations." (Record #14.) Thus, the court finds that there is ample evidence in the Record to find that the amendments are consistent with the comprehensive plan.
The plaintiff also argues that the notice surrounding the amendments to the zoning regulations was insufficient. This court addressed the issue of notice with regard to fundamental fairness in Sarlom v. Watertown Planning Zoning Commission, supra, Superior Court, Docket No. 143368, and will incorporate that reasoning and finding by reference.
II Police Powers
In order for a zone change to be upheld, it must be in conformance with a comprehensive plan and reasonably related to the "normal police powers enumerated in [General Statutes § ] 8-2."First Hartford Realty Corp. v. Planning Zoning Commission, supra, 165 Conn. 541. "In the absence of a formally adopted comprehensive plan, a town's comprehensive plan is to be found in the scheme of the zoning regulations themselves . . . (Citations omitted; internal quotation marks omitted.) Protect Hamden/NorthHaven v. Planning and Zoning Commission, supra, 220 Conn. 551.
Section 8-2, the zoning enabling statute, provides in pertinent part: "The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures . . . the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes. . . . Such regulations shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation. . . ." General Statutes § 8-2
(a)
The plaintiff argues that the Commission was not acting in furtherance of valid police powers because it was primarily concerned with preventing competition with downtown businesses. CT Page 7894 The plaintiff argues, "[u]pon viewing the record, the Court will observe that the primary motive for the Amendments was to protect businesses centered in the downtown area by precluding competition." (Plaintiff's Brief, dated February 27, 1998, p. 16.) In support of this argument the plaintiff refers to two comments in the record, and the fact that amendment 35.7.8 requires an economic impact study. The court finds the plaintiff's argument unpersuasive. Contrary to the plaintiff's argument, the record demonstrates that the commission was primarily concerned with the economic and social stability of the town in accordance with Article I of the town regulations.
One of the concerns expressed repeatedly by the commission was traffic. Our Supreme Court has held that traffic considerations are within the police powers conferred by §8-2. "One of the proper purposes of zoning enumerated in [§]8-2 is to lessen congestion in the streets." (Internal quotation marks omitted.) First Hartford Realty Corp. , supra, 165 Conn. 544
(holding that a zoning authority may limit commercial development based on the best interests of the entire community and the comprehensive plan, and may seek to lessen traffic congestion under the police powers); see also Protect Hamden/North Haven, supra, 220 Conn. 549; Jarvis Acres, Inc. v. Zoning Commission,163 Conn. 41, 49, 301 A.2d 244 (1972) ("An important purpose of zoning is to alleviate traffic congestion . . . It is not the overall volume of daily traffic, but congestion in the streets, that is, density of traffic, which is referred to in the statute.")
At the hearing on July 23, 1997, there was a discussion regarding large stores as considerable traffic generators. "Mr. Adams commented that with anything over 20,000 sq. ft., you are going to [need to] control the type of traffic generated and the types of uses so that you don't end up with large traffic generators. . . ." (Record #2, p. 3.) Two other members of the Commission agreed. (Record #2, p. 3.) A regulation limiting the floor size of commercial buildings was a method the Commission proposed to control traffic and congestion. There were also concerns regarding the number of parking spaces allowed per building and the estimated traffic. (Record #2, p. 3.) Such concerns also included local street impact within a half mile radius. (Record #2, p. 4.) In regard to the amount of retail activity allowed, the zoning and planning official stated that "retail usually generates more traffic . . . [and that she was thinking] in traffic generation terms." (Record #2, p. 5.) CT Page 7895
At the hearing held on November 12, 1997, the people in attendance supported the concept of limiting square footage allowances. Joseph Masi, a former member of the Commission, agreed that regulating the size of stores would preclude "megastores that cause all kinds of environmental impact problems." (Record #13.) Mr O'Sullivan testified that it would be an "overall improvement to the main corridor" of Town that they attempt to not have very large development in the commercial area with the associated traffic. (Record #13.) There were no members of the general public in attendance that spoke against the proposed regulations. It is clear from the comments made by the commissioners at the special session, the meeting of the Commission that was held after the public hearing, that they supported the proposed regulations because they were designed to reduce traffic and benefit the Town of Watertown in general. The chairperson, Ms. Wick, commented that "as brought out in the public discussion" the Commission is trying to bring back the Main Street community feel instead of development by the automobile. (Record #14.) Commissioner Adams commented that he was one of the biggest advocates of proposals because the big stores and the "magnets" that they draw cause a blighted downtown. He commented on the traffic congestion and wondered whether the area affected by the regulations should be expanded. (Record #14.) Commissioner Gallo supported the amendments because he did not want developers to come in and "complicate our traffic situation even more." (Record # 14.)
Limitations on minimum and maximum square footage have been held to be included under the police powers of 8-2. "Our conclusion is that [§] 8-2 authorizes the enactment of minimum floor regulations not only from the `size of buildings' language but also because this conclusion is reasonable in the light of the entire statutory purpose of [§] 8-2 in the statutory zoning scheme. Therefore, the commission's authority to enact a regulation prescribing minimum floor area requirements is not . . . beyond its power under the zoning enabling act in General Statutes 8-2." Builders Service Corp. v. Planning ZoningCommission, 208 Conn. 267, 277, 545 A.2d 530 (1988). Drawing from the reasoning in Builders Service Corp., the court in SavingsBank of Rockville v. Town of Tolland, Superior Court, judicial district of Tolland at Rockville, Docket No. 659682 (Nov. 20, 1996, Klaczak, J.), upheld maximum floor space regulations stating, "if a commission can regulate the minimum floor area, a commission can limit the maximum floor area of the use of a CT Page 7896 parcel." The court went on to conclude that a regulation may properly aim to curb traffic congestion under the enabling statute. Id.
The court finds that the amendments are reasonably related to the control of traffic and congestion, and are within the police powers enumerated in § 8-2.
III Vagueness
The plaintiff argues that amendment section 35.7.8[1] is unconstitutionally vague, "[t]he phrases `strengthening of Main Street,' `discourages further Strip development,' `serve unmet needs,' and `impact on existing stores,' are unduly vague." (plaintiff's Brief, dated February 27, 1998, p. 22.)
"The standard for determining the adequacy of subdivision regulations is whether they are reasonably precise as the subject matter requires and are reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations. . . ." Smith v. Zoning Board of Appeals,227 Conn. 71, 93, 629 A.2d 1089 (1993), cert. denied,510 U.S. 1164 (1994). The burden of proving that the regulations are "impermissibly vague as applied to the facts" of this particular case rests with the plaintiff. Felsman v. Zoning Commission,31 Conn. App. 674, 681, 626 A.2d 825 (1993) "It is well established that, as a general rule, the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue. . . ." (Citations omitted; internal quotation marks omitted.) Spero v. Zoning Board of Appeals, 217 Conn. 435, 446,586 A.2d 590 (1991).
Common sense must be employed in construing the words of a zoning regulation. Smith v. Zoning Board of Appeals, supra,227 Conn. 93. The court does not find the amendment unduly vague or unascertainable.
IV Constitutionality of General Statutes § 8-3
The plaintiff argues that the two notices published regarding the public hearing should be declared constitutionally inadequate. Specifically, the plaintiff argues that the notice requirements contained in General Statutes § 8-3 (a) are constitutionally deficient as applied to the facts of this case. CT Page 7897 Thus, the plaintiff is challenging the constitutionality of a state statute which is more appropriately addressed in an independent action such as a declaratory judgment. See Samperi v.Planning Zoning Commission, 40 Conn. App. 840, 851 n. 13,674 A.2d 432 (1996); Christofaro v. Burlington Planning ZoningCommission, 11 Conn. App. 260, 263, 527 A.2d 255 (1987)
General Statutes § 8-3 (a) sets forth proper notice procedures for establishing or changing zoning regulations. As discussed in Sarlom v. Watertown Planning Zoning Commission, supra, Superior Court, Docket No. 143368, the Commission in this case followed the statutorily required notice procedures.
 CONCLUSION
For the aforementioned reasons the plaintiff's appeal is dismissed.
PELLEGRINO, J.